UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| PERPOSE OSARO ONAGHISE, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No. 3:20-CV-03033-X |
| § | |
| DEPARTMENT OF HOMELAND § | |
| SECURITY, et al., § | |
| § | |
| *Defendants.* § | |

## MEMORANDUM OPINION AND ORDER

On April 21, 2020, Perpose Osaro Onaghise (plaintiff) sued the Department of Homeland Security, Mark Koumans, Chad F. Wolf, and Gregory A. Richardson (collectively defendants) in federal district court. On February 11, 2022, the parties filed dueling motions for summary judgment. For the reasons stated below, the Court **DENIES** Onaghise's motion for summary judgment [Doc. No. 58] and **GRANTS** the defendants' motion for summary judgment [Doc. No. 60].

### I.   Factual Background

Plaintiff Perpose Osaro Onaghise resides in Nigeria. He is a skilled mechanical engineer in the oil and gas industry. Onaghise is employed as a Reliability Quality Maintenance Champion for Schlumberger, a Houston-based oilfield services company. In his several years with the company, Onaghise helped the company develop new technology to bolster Schlumberger's success, supervised many employees, and was mentioned for his work in a publication. In November

1

Case 3:20-cv-03033-X Document 72 Filed 09/02/22 Page 2 of 19 PageID 1281

2019, Onaghise filed for an I-140 petition (hereinafter EB-1 petition) to come work for Schlumberger in the United States.

On February 4, 2020, after comprehensive review and requests for additional information and evidence, the United States Citizenship and Immigration Services denied Onaghise's EB-1 petition stating that he had satisfied only one of the ten criteria and had therefore failed to establish initial evidence that he qualified for such a visa. USCIS never reached a determination as to the second step of the EB-1 test, as Onaghise's application did not make it past step one. In June 2020, USCIS reopened Onaghise's petition, requested further additional evidence, and issued a final denial on October 1, 2020. Onaghise then filed this suit seeking review of the denial pursuant to the Administrative Procedure Act (APA).

## II. Legal Standards

Summary judgement should be awarded when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] Summary judgment is especially common in disputes arising from appeals pursuant to the APA because "whether an agency's decision is arbitrary and capricious is a legal question" which can usually be decided using only the agency record.[2] Cross-motions for summary judgment arising out of APA review may be handled without

---

[1] FED. R. CIV. P. 56(a).

[2] *Amin v. Mayorkas*, 24 F.4th 383, 391 (5th Cir. 2022).

separate and individualized analysis "because the reviewing courts address questions of law equally applicable to both motions."[3]

The APA allows judicial review of final agency actions.[4] Under the APA, courts may hold unlawful and set aside agency actions that were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."[5] While not a "rubber stamp,"[6] courts are highly deferential to agency decisions and employ a narrow scope of review under the "arbitrary and capricious" standard.[7] The Court must not "substitute its judgment for that of the agency."[8] Rather, it must decide whether the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."[9] "The agency must articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."[10] And the Court may not substitute its own reasoning to justify the agency's conclusions if the agency

---

[3] *Or. Nat. Desert Ass'n v. Cain*, 17 F. Supp. 3d 1037, 1047 (D. Or. 2014).

[4] *See* 5 U.S.C. § 704.

[5] *Id.* § 706(2)(A).

[6] *Thatikonda v. U.S. Citizen & Immigr. Servs.*, No. CV 19-685 (RC), 2020 WL 2126716, at *3 (D. D.C. May 5, 2020).

[7] *Bowman Transp., Inc. v. Arkansas-Best Freight Sys. Inc.*, 419 U.S. 281, 285–86 (1974).

[8] *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

[9] *Id.*

[10] *Huawei Techs. USA, Inc. v. Fed. Commc'ns Comm'n*, 2 F.4th 421, 434 (5th Cir. 2021) (cleaned up).

has not provided rational justifications itself.[11]  The Court may, however, "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."[12]

### III. Analysis

EB-1 petitions, nicknamed "Einstein" visas, are coveted visas reserved for only the most talented "noncitizens with 'extraordinary ability in the sciences, arts, education, business, or athletics.'"[13]  These visas are valuable because they grant a high priority preference to aliens of extraordinary ability.  "Extraordinary ability" is defined by the Immigration and Naturalization Service (INS) as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor."[14]  In the past, these visas have been granted to world-class professional golfers,[15] Nobel laureates,[16] and even Beatles legend John Lennon.[17]

When adjudicating these applications, USCIS'S first step is to consider whether the applicant has submitted "initial evidence" of either a major one-time

---

[11] *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

[12] *Bowman Transp., Inc.*, 419 U.S. at 286.

[13] *Amin*, 24 F.4th at 386 (quoting 8 U.S.C. § 1153(b)(1)(A)).

[14] 8 C.F.R. § 204.5(h)(2).

[15] *See Matter of Price*, 20 I. & N. Dec. 953 (BIA 1994).

[16] *See Amin*, 24 F.4th at 386.

[17] *Id.* at 386.

achievement like an internationally recognized award or evidence sufficient to satisfy at least three of ten relevant criteria.[18]  Those ten criteria are:

- (i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;
- (ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;
- (iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;
- (iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;
- (v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;
- (vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;
- (vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;
- (viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;
- (ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or
- (x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.[19]

---

[18] *Id.* at 387–88.

[19] *Id.*. §8 C.F.R. § 204.5(h)(3)(i-)–(x).

5

If the applicant satisfies step one, USCIS proceeds to the second step, wherein it makes a "final merits determination"[20] as to whether the petitioner has shown a "level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor."[21]

Here, Onaghise did not argue that he has "one-time achievement (that is, a major, international recognized award)"[22] and thus attempted to satisfy the initial-evidence step by claiming to satisfy six of the ten criteria: the third, fourth, fifth, sixth, eighth, and ninth criteria. USCIS found that Onaghise satisfied only criterion eight (providing evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation) through his work for Schlumberger. So USCIS found that Onaghise failed on step one and did not move on to step two and make a final merits determination.[23]

Onaghise argues that USCIS was arbitrary and capricious in finding that Onaghise failed to satisfy the other five criteria. The Court now reviews USCIS's decisions on each of these criteria to determine whether it was arbitrary or capricious in concluding that Onaghise did not submit evidence sufficient to satisfy them.

---

[20] *Amin*, 24 F.4th at 388.

[21] 8 C.F.R. § 204.5(h)(2).

[22] *Id.* § 204.5(h)(3).

[23] *Amin*, 24 F.4th at 388.

### A. USCIS's conclusion that Onaghise failed to satisfy the third criterion was not arbitrary or capricious.

Criterion three requires a petitioner to submit documentation showing "[p]ublished material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought."[24] Agency guidelines require the petitioner's evidence to show that the publication's circulation or viewership is "high compared to other statistics and show who the intended audience is."[25] In his original petition, Onaghise stated with respect to this criterion that:

> There has been a great deal of material published about [Onaghise's] original scientific business contribution to the field of mechanical engineering specializing in performance assessment, design, testing, and implementation of fit-for-purpose Rotary Steerable System (RSS) downhole drilling tools in the oil and gas industry, and about the elite leadership roles he has played which proven so critical to the major players.[26]

As evidence to satisfy this criterion, Onaghise provided USCIS with two articles. The first of these was a one-paragraph article published about Onaghise in the *Houston Business Journal* on June 17, 2019, entitled "People on the Move—Professional Recognition, Perpose Onaghise."[27] The second was a two-page article written by Onaghise about himself and his work in the field that he posted to the "Oil

---

[24] 8 C.F.R. § 204.5(h)(3)(iii).

[25] 6 USCIS Policy Manual, pt. F, ch. 2, app., *available at* https://www.uscis.gov/policy-manual/volume-6-part-f-chapter-2; *see also* Doc. No. 42-1 at 5 (reciting and then applying that standard here). While Onaghise argues that absolute circulation statistics are not a proper consideration here, he does not argue that USCIS's use of other statistics is incorrect.

[26] Doc. No. 42-2 at 120.

[27] *Id.*

7

and Gas Upstream" channel, an online blog associated with the *Oil & Gas Journal*.[28] USCIS concluded that neither of these articles were sufficient to satisfy criterion three.

USCIS concluded that the *Houston Business Journal* article did not satisfy criterion three because it determined that the *Houston Business Journal* was not a professional or trade publication or other major media, and neither did the journal have a high circulation relative to similar publications.[29] USCIS reviewed data which showed that *Houston Business Journal*'s circulation was slightly above the median circulation for 132 business publications.[30]

According to Onaghise, USCIS's determination was arbitrary and capricious, as it "contradicts the plain meaning of the regulation, which only requires a finding that the publisher's circulation is 'high compared to other circulation statistics.'"[31] But USCIS's determination that a circulation number slightly above the median in a data set is not "high" compared to the set's other circulation numbers seems perfectly reasonable, and Onaghise provides no contrary authority or analysis. So, USCIS was not arbitrary or capricious in finding that the *Houston Business Journal* did not have

---

[28] According to Onaghise, he actually submitted the article he published to satisfy only criterion six. Doc. No. 59 at 17. USCIS considered it as to both criterion three and criterion six, so the Court addresses it in both contexts as well.

[29] Doc. No. 42-1 at 7.

[30] Doc. No. 42-1 at 5. Out of these 132, the *Houston Business Journal* had the sixtieth-highest circulation.

[31] Doc. No. 59 at 10.

8

a high circulation relative to other circulation statistics, and that the one-paragraph article in it about Onaghise therefore did not satisfy criterion three.[32]

Onaghise also argues that USCIS was arbitrary and capricious in determining that the *Houston Business Journal* did not satisfy criterion three because the *Houston Business Journal* is read by people in Houston, and Houston is a major city in the oil industry, so the publication must be read widely among professionals throughout the oil industry.

To support this argument, Onaghise supplied USCIS with a letter from an industry employee.[33] As USCIS explained, relying on the administrative decision in *Matter of Caron International*, it "may, in its discretion, use as advisory opinions statements submitted as expert testimony."[34] But "where an opinion is not in accord with other information or is in any way questionable [USCIS] is not required to accept or may give less weight to that evidence."[35] Onaghise argues that USCIS improperly applied that standard here because there was "no contradictory evidence to rebut the expert testimony" and "USCIS made no such finding."[36] But as the Court just

---

[32] Because it agrees with USCIS's determination that the *Houston Business Journal* article did not satisfy criterion three based on the relative statistics, the Court need not consider Onaghise's argument that USCIS was also wrong in deciding that the journal is not a major or trade publication.

[33] Doc. No. 42-1 at 285.

[34] *Id.* at 8 (citing *Matter of Caron Int'l*, 19 I. & N. Dec. 791, 795 (BIA 1988) ("This Service may, in its discretion, use as advisory opinions statements from universities, professional organizations, or other sources submitted in evidence as expert testimony.")). Confusingly, Onaghise argues that, under *Caron*, treating such evidence as "advisory opinions" impermissibly demotes it from "expert testimony." Doc. No. 59 at 15–16. But the discretionary use of such evidence as advisory opinions is exactly what *Caron* allows, as the sentence the Court has quoted in this footnote reflects.

[35] *Caron*, 19 I. & N. Dec. at 795; *see also* Doc. No. 42-1 at 8 (paraphrasing same).

[36] Doc. No. 59 at 16.

9

discussed, USCIS concluded that the relative circulation statistics did not indicate that the *Houston Business Journal* article satisfied criterion three, so the letter was not in accord with this other information before USCIS.  So, notwithstanding this letter, USCIS was not arbitrary and capricious in concluding that the *Houston Business Journal* article did not satisfy criterion three.

Onaghise also submitted an article that he had written about himself and his work in the field that he posted to the "Oil and Gas Upstream" channel on the "Oil and Gas Community" website as evidence to satisfy criterion three.  The "Oil and Gas Community" website was created by the editors of the *Oil and Gas Journal*.[37]  The website describes itself as "the online meeting place for oil and gas professionals," and "enables [oil and gas professionals] to find, learn from, and share ideas with others interested in subjects important to [them] and [their] work, including [*Oil and Gas Journal*] editors."[38]  The website was subdivided into a number of channels for specific areas in the oil and gas industry, including the "Upstream" channel to which Onaghise posted his article.

Onaghise did not submit any circulation information for the "Upstream" channel on the "Oil and Gas Community" website.  USCIS seemingly conceded that the *Oil and Gas Journal* itself does qualify as a professional, major trade, or other major media, and is "one of the most widely read and distributed trade journals in the industry" but concluded that the journal is distinct from the online forum where

---

[37] Doc. No. 42-1 at 6.

[38] *Id*.

Onaghise posted his article.[39]  The evidence in the record supports this distinction and shows that this channel was a blog-like forum where community members could post information or articles that they had written.  Editorial involvement on the site was limited to "monitor[ing] activity and omit[ting] anything wildly off-subject, blatantly commercial, or otherwise inappropriate."[40]  So, lacking circulation information for the "Upstream" channel, USCIS could "not determine that [it] [was] a professional or major trade publication or other major media."[41]  So, USCIS was not arbitrary or capricious in concluding that the article Onaghise posted on the "Upstream" channel failed to satisfy criterion three.

### B. USCIS's conclusion that Onaghise failed to satisfy the fourth criterion was not arbitrary or capricious.

To satisfy criterion four, a petitioner must provide "[e]vidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought."[42]  Onaghise submitted documentation about his work for his employer, information about the field in which he works, and various letters of support to satisfy this criterion.

Per the record, USCIS evaluated each piece of evidence provided by Onaghise and found that they did not demonstrate that Onaghise had served as a judge of the work of others.  Onaghise takes particular issue with USCIS's handling of letters

---

[39] Doc. No. 42-1 at 7–8.

[40] Doc. No. 42-1 at 110.

[41] *Id.* at 7.

[42] 8 C.F.R. § 204.5(h)(3)(iv).

11

from acquaintances in support of Onaghise. These letters describe Onaghise's experience "judging" the work of members of one of Schlumberger's teams,[43] "assessing and improving the qualifications of other engineers,"[44] and auditing safety protocols at Schlumberger's facilities in Alaska.[45] But as USCIS explained, while these letters did "indicate that [Onaghise] had various responsibilities for his employer, provided different types of input, and generally state that [Onaghise] taught, trained, and mentored other individuals in the field, such activities do not constitute judging the work of others, either individually or on a panel."[46]

Onaghise argues that USCIS illegitimately determined that the "judging of the work of others" must occur outside the scope of the petitioner's employment to satisfy this criterion. And indeed, numerous federal courts, including courts in this district, have held that no such requirement exists.[47] The Court need not address this issue, however, as the final USCIS decision does not rely on this outside-the-scope-of-employment standard. While USCIS does appear to have relied on this standard in its initial decision,[48] USCIS's final decision and final request for evidence make no

---

[43] Doc. No. 42-3 at 163.

[44] *Id.* at 179.

[45] Doc. No. 42-1 at 285.

[46] *Id.* at 10.

[47] *See, e.g.*, *Kinuthia v. Rosenberg*, No. CV 17-10255-LTS, 2018 WL 1243955, at *5 (D. Mass. Mar. 8, 2018), *aff'd sub nom. Kinuthia v. Velarde*, No. 18-1244, 2019 WL 11671989 (1st Cir. July 3, 2019) (holding that evidence of a petitioner serving as a judge is not required to occur outside of the scope of the petitioner's work); *MRC Energy Co. v. U.S. Citizenship & Immigr. Servs.*, No. 3:19-CV-2003-K, 2021 WL 1209188, at *11 (N.D. Tex. Mar. 31, 2021) (Kinkeade, J.) (same).

[48] Doc. No. 42-1 at 203. The government also utilizes this standard in its briefing.

reference to the requirement that the petitioner's judging need occur outside of the petitioner's employment.

Regardless, USCIS found that Onaghise did not act as a judge of the work of others in *any* capacity, whether inside the scope of his employment or outside of it. So, USCIS was not arbitrary or capricious in concluding that Onaghise did not satisfy criterion four.

## C. USCIS's conclusion that Onaghise failed to satisfy the fifth criterion was not arbitrary or capricious.

To satisfy criterion five, a petitioner must provide "[e]vidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field."[49] Onaghise submitted documents concerning his work for his employer, information about the field he works in, and letters of support indicating he helped pioneer a new tool called valve stream mapping (VSM) in the oil and gas industry. After determining that this evidence failed to demonstrate that Onaghise's contributions impacted his industry beyond his company and some of its clients, USCIS concluded that the petitioner did not meet this criterion.

Onaghise's primary complaint regarding USCIS's handling of his petition concerns its treatment of the letters of support submitted into the record. Onaghise argues that USCIS inappropriately disregarded these documents and reached an arbitrary conclusion in spite of the proof supporting his position. One such letter describes how Onaghise's contributions to the oil industry are still being used by

---

[49] 8 C.F.R. § 204.5(h)(3)(v).

13

Schlumberger and "companies like ConocoPhillips with which they partner around the world."[50] Other letters state how Onaghise modified VSM technology "based on detailed conversations with both Schlumberger and ConocoPhillips,"[51] and how Onaghise developed technological innovations which were "eventually incorporated into other Schlumberger teams around the world in order to optimize project productivity and efficiency."[52] But USCIS found that these letters do not provide "specific, detailed information to show the beneficiary's work resulted in original contributions of major significance in the field."[53] USCIS further elaborated that the evidence Onaghise submitted into the record, including the letters of support, lacked information demonstrating his contribution's reach beyond his own company and clients.

In a similar case, the Fifth Circuit recently concluded that USCIS was not arbitrary or capricious in determining that two innovations were not of major significance to the field when there was no evidence of "widespread replication" of one and no evidence "that anyone beyond [the petitioner's] company used (or even attempted to use)" the other.[54] Likewise, the contribution Onaghise claims to have made to the oil and gas industry appears to have impacted only his own company and some of his company's clients. So USCIS was not arbitrary or capricious in finding

---

[50] Doc. No. 42-3 at 177.

[51] Doc. No. 42-1 at 284.

[52] Doc. No. 42-3 at 170.

[53] Doc. No. 42-1 at 14.

[54] *Amin*, 24 F.4th at 394.

14

that Onaghise lacked evidence that his contribution to VSM was of major impact to the oil and gas industry as a whole, and that Onaghise had therefore not satisfied criterion five.

## D. USCIS's conclusion that Onaghise failed to satisfy the sixth criterion was not arbitrary or capricous.

USCIS was not arbitrary or capricious in finding that Onaghise failed to provide evidence to satisfy criterion six. To satisfy this criterion, a petitioner must provide "[e]vidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media."[55] Onaghise argues that the two-page article he wrote about himself and his work and posted to the Oil and Gas Community's "Upstream" website channel satisfied this requirement. Onaghise submitted the article, information about publications, information about the oil and gas industry, dictionary definitions of the words "publish" and "post," and letters of support.

But Onaghise did not supply USCIS with any circulation statistics for the channel. So, just as USCIS could not determine that Onaghise's article was an article published about him in "professional or major trade publications or other major media," it could not determine that it was a scholarly article by him in "professional or major trade publications or other major media." Accordingly, USCIS was not

---

[55] 8 C.F.R. § 204.5(h)(3)(vi).

arbitrary or capricious in concluding that the article Onaghise posted to the "Upstream" website channel did not satisfy criterion six.[56]

### E. USCIS's conclusion that Onaghise failed to satisfy criterion nine was not arbitrary or capricious.

To satisfy criterion nine, a petitioner must provide "[e]vidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field."[57] Onaghise submitted IRS form W-2s, which list his social security wages as $118,500.00, $127,200.00, and $128,400.00 for 2016, 2017, and 2018, respectively. Meanwhile the W-2s listed his total wages, tips, and other compensation as $136,000.00, $140,015.06, and $161,000.00, for those same years.

As USCIS explained, "[t]his suggests the beneficiary earned a base salary and received additional other compensation or remuneration (such as living allowances, stock options, incentives, or bonuses) for each of those years," a reality confirmed by USCIS's review of evidence of various allowances Onaghise had received.[58] For example, Onaghise received "a $30,000 mobility payment, a $5,000 living allowance, a relocation allowance of 2 months salary capped at $15,000 per month, a housing

---

[56] Onaghise makes much of the fact that the government's briefing does not contain arguments specifically addressing Onaghise's article in the context of criterion six as opposed to criterion three, arguing that "[i]n light of the [government's] silence on this issue alone, the Court should not grant [its] motion for summary judgment." Doc. No. 67 at 31. But as the Court has explained, USCIS's reasoning was essentially identical as to both criterion three and criterion six. And even if the Court were to resolve this issue in Onaghise's favor, it would still grant the government's motion for summary judgment, as Onaghise would still lack the requisite number of criteria.

[57] 8 C.F.R. § 204.5(h)(3)(ix).

[58] Doc. No. 42-1 at 18–19.

16

allowance of $1,400 per month, travel allowance, and an education allowance for his children up to $30,000 per child."[59]

Onaghise argues that USCIS, in the face of W-2s indicating his actual total compensation to be substantially higher, improperly concluded that his various base salary was either $68,840 or $63,540 based on visa applications previously submitted to the State Department on his behalf. But this appears to be consistent with USCIS's conclusion that Onaghise's total compensation was a combination of base salary and additional allowances, bonuses, and the like.

Regardless of what his wages actually are, the real issue is that Onaghise did not provide evidence for USCIS to conclude that his salary is "high . . . in relation to others in the field."[60] As USCIS explained, Onaghise's evidence "d[id] not contain any information about what other compensation or remuneration (such as living allowances, stock options, incentives, or bonuses) [those in similar positions] earned."[61] Considering the substantial additional compensation Onaghise received, detailed above, such information would certainly seem to be material in comparing Onaghise's compensation with that of others. So, even if Onaghise is correct that USCIS improperly determined and considered his base salary instead of his total

---

[59] Doc. No. 59 at 30; *see also* Doc. No. 42-1 at 19.

[60] 8 C.F.R. § 204.5(h)(3)(ix).

[61] Doc. No. 42-1 at 20.

17

compensation, USCIS had an additional and sufficient reason to find that he failed to satisfy criterion nine.[62]

Onaghise also argues that, if USCIS was correct in determining that his base salary was $68,840, it was arbitrary and capricious in concluding that this was not "high" compared to others, as the comparable median base salary was $56,250 based on Occupational Employment Statistics considered by USCIS.[63] But according to those same statistics, the top 10% in that data set earned at least $85,430, significantly higher than Onaghise's base salary.[64] The Court cannot say that it was arbitrary or capricious to determine that a base salary that is, at least in absolute terms, so far below the minimum salary to be in the top 10% of earners in comparable positions as to not be "high" relative to the rest.

While Onaghise cites *Muni v. I.N.S.* in support, there USCIS had only considered the average salaries of National Hockey League players.[65] As the district court explained, the average salary was not an appropriate measuring stick, as "the superstars of the NHL make tremendously high salaries, and that can skew any average."[66] In other words, because "a few very highly paid players [could] skew the

---

[62] Onaghise's application suffered from a general lack of relevant comparative information: much of the evidence Onaghise *did* submit was related to Maintenance Technicians, not Maintenance Mechanical Technicians. As USCIS explained in its decision, "the salaries or other remuneration of those performing work in a related but distinct occupation (Maintenance Technicians) are not a proper basis to determine whether the beneficiary's salary is high (or his other remuneration is significantly high) in relation to others in hisfield (Maintenance Mechanical Technician . . .)." Doc. No. 42-1 at 20.

[63] Doc. No. 42-1 at 20; Doc. No. 59 at 31.

[64] Doc. No. 42-1 at 20.

[65] *Muni v. I.N.S.*, 891 F. Supp. 440, 444–45 (N.D. Ill. 1995).

[66] *Id.* at 445 (cleaned up).

18

average salary upward," it was not reasonable to assume that a player paid the league average salary was not making more "than most other players" in the league.[67] Here, USCIS did not consider average salaries. Instead, it looked to percentiles, and Onaghise's base salary was $68,840, far less than the $85,430 minimum to be in the top 10% of comparators.

So, USCIS was not arbitrary or capricious in concluding that Onaghise failed to satisfy the ninth criterion.

### IV.   Conclusion

For the foregoing reasons, the Court **DENIES** Onaghise's motion for summary judgment, and **GRANTS** the government's motion for summary judgment.

**IT IS SO ORDERED** this 2nd day of September, 2022.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[67] *Id.* at 444.